19774

The STATE, Respondent, v. William ROBINSON, Appellant.

(203 S. E. (2d) 483)

194

*Messrs. Edward C. Cushman, Jr.,* of Aiken, and *Frank K. Sloan,* of Columbia, *for Appellant,*

*Messrs. Daniel R. McLeod, Atty Gen., Emmet H. Clair* and *Robert M. Ariail, Asst. Attys. Gen.,* of Columbia, and *C. Lavaun Fox, Sol.* of Aiken, *for Respondent,*

February 20, 1974.

*Per Curiam:*

Appellant Robinson was convicted at the January, 1973 term of General Sessions Court of Aiken County of the crimes of murder and burglary and sentenced to life imprisonment. He was charged with having burglarized the home of one Shirley Mae Sullivan and murdered one Maurice L. Patton on September 30, 1972.

Briefly stated the facts of the case are as follows: Sullivan is a young married woman with two children, separated from her husband, but not divorced. At the time of the trial and for sometime prior thereto she was admittedly a prostitute. She and the Appellant Robinson had lived together for some three years and had separated approximately six weeks prior to the commission of the alleged crimes. Although separated, they remained on friendly terms and on the afternoon immediately preceding the homicide, Sullivan was driving a motor vehicle, the property of Robinson. According to Robinson when she returned the keys to the motor vehicle to him his house key had been removed from the key ring. He went repeatedly that night to the home of Sullivan, allegedly for the purpose of retrieving his house key, but did not find her at home until very late. When he did find her at home she was in bed with Patton and would not open the door to Robinson. According to her she didn't want any trouble and she went out of the backway and to the home of her mother very nearby. After her departure shots were exchanged between Patton and Robinson with both being wounded, Patton fatally, there being no surviving witness to the shooting other than the Appellant Robinson. Robinson denied burglariously entering

the Sullivan home and contends that Patton was shot in self-defense.

Several questions are presented upon appeal. In the cross examination of Sullivan she was queried as to her employment. She responded that she was not working at the time of the trial, as she had some money saved up, and that at the time of the alleged crimes she was working as a prostitute for the defendant. Counsel then cross examined her as to how much money she claimed to have given the defendant, apparently attempting to test her varacity. In the event the court interrupted the cross examination as follows:

"The Court: How much money did you give him all together?

"A. Concerning a week, Your Honor? .

"The Court: I mean the whole time you were there?
"A. I couldn't add it up, it was so much.

"The Court: How much would you make as a prostitute? Say a night?
"A. A night—something like $200.00 a night.

"The Court: He was just a pimp living off your income, and other people's income, is that right?
"A. Yes, sir."

Upon this occurrence, counsel for defense immediately requested that the jury be excused and then moved for a mistrial. The judge not only denied the motion but ruled that "I'm not going to comment on it any further," and sought to justify his intervention as proper on the asserted ground that counsel had by cross examining Sullivan as to her occupation and disposition of her earnings, opened the door to the intervention by the Court and that the Court was simply trying to clarify the answers being given by said Sullivan.

In our view the remarks of the trial judge were entirely uncalled for and patently so erroneous and prejudicial as to

require little discussion or citation of authority. Robinson had not sought to put his character in issue and the record reflects without dispute that he was regularly and legitimately employed in a position of some responsibility with a substantial earning capacity. Under the circumstances His Honor's comments were erroneous and prejudicial in two respects. He imputed to the appellant the commission of a crime other than that for which he was being tried and such comment was in violation of former Article 5, Section 26, now Article 5, Section 17 of the South Carolina Constitution which provides that "Judges shall not charge juries in respect to matters of fact, but shall declare the law." See the numerous cases cited in West's South Carolina Digest, Criminal Law, Key No. 656.

The appellant further contends that there was insufficient evidence to support his conviction of either of the crimes with which he was charged and that he was entitled to a directed verdict. As to this contention it is elementary that the evidence has to be viewed in the light most favorable to the State. Suffice it to say that we have reviewed the evidence in such light and concluded that there was no error on the part of the Court in this respect. Since there will be a new trial we refrain from commenting on the evidence in any detail.

For the reasons hereinabove set forth the judgment below is reversed and the case remanded for a new trial.

Reversed.